IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
)
v. ) 1:98-cr-192-4 (LMB)
)
XAVIER MARCELLUS PAUL, )
)
Defendant. )

## MEMORANDUM OPINION

Before the Court is Xavier Marcellus Paul's ("Paul" or "defendant") pro se Motion to Reduce [Dkt. No. 315] and a Supplemental Motion to Reduce Sentence Pursuant to § 404 of the First Step Act of 2018 [Dkt. No. 319] filed on his behalf by the Office of the Federal Public Defender. In these motions, Paul seeks a reduction of the term of imprisonment for his convictions related to the possession with intent to distribute crack cocaine from 324 months to 288 months, or time served if the Bureau of Prisons ("BOP") determines that a sentence of 288 months would result in Paul's immediate release. The United States opposes these motions, arguing that Paul is ineligible for relief under the First Step Act and that even if he were eligible, relief should be denied under the circumstances of his case. For the reasons stated below, Paul's motions will be granted.

## I. BACKGROUND

On May 14, 1998, when Paul was 24 years-old, a federal grand jury in the Eastern District of Virginia returned an indictment charging him and three co-defendants with conspiracy

to possess and distribute 50 grams or more of cocaine base, a Schedule II controlled substance,[1] in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1), and charging Paul with aiding and abetting the possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 5). [Dkt. No. 319-1]. At the time, under 21 U.S.C. § 841(b)(1)(A)(iii), each count carried a mandatory minimum sentence of 10 years' imprisonment and a maximum of life imprisonment.

In August 1998, Paul and one of his co-defendants proceeded to a jury trial conducted by Judge James C. Cacheris, who has since retired from the bench.[2] At the close of trial, Judge Cacheris instructed the jury that "[t]he evidence received in this case need not prove the actual amount of the controlled substance that was part of the alleged transactions or the exact amount of the controlled substance alleged in the Indictment"; instead, "[t]he government must prove beyond a reasonable doubt . . . a measurable amount of the controlled substance alleged in the Indictment." [Dkt. No. 319-1] at 21. The jury found Paul guilty of Counts 1 and 5, but in light of how it was instructed, made no findings about the amount of cocaine base involved in either offense.[3] Id. at 25.

The Presentence Investigation Report (PSR) held Paul accountable for 3,598 grams of cocaine base, [Dkt. No. 320] at 7, ¶ 17, and on that basis calculated Paul's base offense level to

---

[1] The federal statute at issue here applies to any mixture or substance that contains "cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii). That term includes, but is broader than, what is commonly known as "crack cocaine." See DePierre v. United States, 564 U.S. 70, 78-83 (2011). For purposes of this opinion, the terms "cocaine base" and "crack cocaine" are used interchangeably.

[2] This case was reassigned to the undersigned judge on September 6, 2019.

[3] The jury trial occurred before the Supreme Court's decisions in Alleyne v. United States, 570 U.S. 99 (2013) and Apprendi v. New Jersey, 530 U.S. 466 (2000), under which facts that increase the statutory maximum or minimum penalty for a crime must be submitted to the jury.

be 38, PSR Worksheet A, id. at 21. The probation officer added two levels for obstruction of justice based on Paul testifying falsely during the trial, resulting in a final offense level of 40. Id. at 8-9, 17. Given that Paul's criminal history was assessed as a category VI,[4] id. at 17, ¶ 69-70, the resulting sentencing range was 360 months to life imprisonment. Through counsel, Paul objected to this sentencing range, asserting, among other claims, that the amount of drugs attributed to him in the PSR was too high and that the PSR overstated the seriousness of his criminal history. [Dkt. No. 319-1] at 30-39, 41-42. The Court overruled Paul's objections, adopted the PSR, and pursuant to the then-mandatory guidelines,[5] sentenced him to 360 months' imprisonment for each count, to run concurrently and to be followed by a five-year period of supervised release. [Dkt. No. 319-1] at 42-45, 47. The Court concluded that this sentence was "more than adequate" for punishment and deterrence. [Dkt. No. 319-1] at 45.

In March 2010, Paul filed a pro se motion for a sentence reduction under Guideline Amendment 706, which lowered the base offense levels for crack cocaine offenses. [Dkt. No. 287]. This motion was denied because even with the reduction in the base offense level, Paul's

---

[4] The PSR determined that Paul had accumulated 14 criminal history points, which placed him in the highest criminal history category. That criminal history consisted of three points for simple assault and possession with intent to distribute cocaine when Paul was a juvenile. The remainder of his criminal history points came from convictions for battery in 1993, destruction of property and threats in 1994, assault and battery in 1996, two simple assaults in 1997, and having committed the drug offenses involved in this case while on probation from the assault and battery conviction and within 180 days of release for one of the simple assault convictions. PSR Worksheet C, id. at 22-23. Other than the conviction as a juvenile for possessing cocaine with the intent to distribute it, for which he received one year in the custody of the Washington, DC Department of Human Services, the longest sentence Paul served for any of his adult convictions was one year of incarceration. Id. The PSR also reflected that in 1994, a vocational and educational evaluation showed that Paul functions at the borderline range of intelligence. Id. at 16, ¶ 58.

[5] Paul was sentenced before the Supreme Court declared unconstitutional the provision of the federal sentencing statute making the sentencing guidelines mandatory. See United States v. Booker, 543 U.S. 220, 245 (2005) (invalidating 18 U.S.C. § 3553(b)(1) (Supp. IV 2000)).

guideline range remained the same: 360 months to life imprisonment. [Dkt. No. 293]. In November 2015, Paul moved, through counsel, for a sentence reduction pursuant to Amendment 782 to the guidelines. [Dkt. No. 309]. As Paul argued at the time, under the amended guidelines and using the amount of cocaine base used in the PSR, Paul's offense level should be 36, which combined with a category VI criminal history would result in an advisory guideline range of 324 months to 405 months. The Court granted Paul's motion, and reduced his sentence from 360 months to 324 months. [Dkt. No. 310].

In the Fair Sentencing Act of 2010, Congress amended § 841(b)(1) to reduce the disparity in the penalties for cocaine-related drug offenses. As relevant here, it increased the threshold for the statutory sentencing range of ten years to life imprisonment from 50 grams to 280 grams of cocaine base, and increased the threshold for the range of five to forty years imprisonment from 5 grams to 28 grams of cocaine base. Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (codified as amended at 21 U.S.C. § 841(b)(1)). And in Section 404 of the First Step Act of 2018, Congress provided that a court that had "imposed a sentence" for a "covered offense," meaning a pre-August 2010 violation of a federal criminal statute "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act," "may . . . impose a reduced sentence as if sections 2 and 3 of the [Act] were in effect at the time the . . . offense was committed." Pub. L. No. 115-391, § 404(a)-(b), 132 Stat. 5194, 5222. The First Step Act makes clear that even if a defendant is eligible for a sentence reduction, the decision whether to grant a reduction remains within the district court's discretion. See id. § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

As of September 13, 2019, Paul's Summary Reentry Plan – Progress Report indicated that Paul's projected release date is August 27, 2022, and that he has been incarcerated for 21

4

years and three months, and has accrued 823 days of good conduct time, statutory good time, or extra good time, plus 167 days of jail credit. [Dkt. No. 319-2] at 13. Combining these amounts, it appears that Paul has served at least 288 months' imprisonment.

## II. DISCUSSION

In the instant motion, Paul argues that the Court should reduce his sentence from 324 months to 288 months or time served under Section 404 of the First Step Act, in light of his eligibility for such a reduction, the harshness of the prior statutory penalties for crack cocaine offenses, and his rehabilitation over the last twenty years.[6] The government argues both that the defendant is ineligible for a sentence reduction under the First Step Act and that even assuming he were eligible, such relief is inappropriate under the circumstances of his case. Neither of the government's arguments is persuasive.

The government argues that Paul is ineligible for a First Step Act reduction because he was not sentenced for a "covered offense." Under the statute, a "covered offense" is a pre-August 2010 "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." Pub. L. No. 115-391, § 404(a), 132 Stat. 5194, 5222. The government argues that the phrase "the statutory penalties for which" modifies the full phrase "a violation of a Federal criminal statute," rather than simply "Federal criminal statute." [Dkt. No. 322] at 6. Accordingly, the government argues, the Court should evaluate Paul's eligibility "by reference to the specific violation [he] committed, rather than his statute of conviction." Id. The government argues that Paul's violation, as determined by reference to the

---

[6] Paul's motion was filed pursuant to 18 U.S.C. § 3582(c)(1)(B), which the Fourth Circuit recently confirmed is the "appropriate vehicle for a First Step Act motion." United States v. Wirsing, No. 19-6381, 2019 WL 6139017, at *7 (4th Cir. Nov. 20, 2019), as amended (Nov. 21, 2019). Any restrictions associated with 18 U.S.C. § 3582(c)(2) are therefore inapplicable.

5

offense conduct elicited through trial testimony and described in the PSR, supports a finding that he was responsible for more than 280 grams of cocaine base and therefore would have been subject to the same penalty range even if the Fair Sentencing Act had been in effect.

Recently, the Fourth Circuit squarely rejected this argument by holding, in United States v. Wirsing, that "[t]he most natural reading of the First Step Act's definition of 'covered offense' is that 'the statutory penalties for which were modified by [certain sections of the Fair Sentencing Act]' refers to 'a Federal criminal statute' rather than 'a violation of a Federal criminal statute,'" and that this interpretation "is supported by the statutory background in which the First Step Act was enacted and which it incorporates." 2019 WL 6139017 at *8-9 (emphasis in original). The Fourth Circuit observed that "[t]here is no indication that Congress intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis," and therefore adopted a "simple interpretation of the statute": that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act." Id. at *9.

Paul is such a defendant.[7] At the time of Paul's offenses, the applicable statutory penalties were provided under 21 U.S.C. § 841(b)(1)(A)(iii), which was modified by the Fair

---

[7] The Wirsing decision was issued the same day the government's reply was due, and the government therefore has not addressed this new authority; however, additional briefing would not aid the decisional process, particularly since even before Wirsing, this Court had "join[ed] the growing consensus that eligibility for a sentence reduction under the First Step Act depends on the offense as described in the charging document, not on an individualized analysis of the actual drug quantities attributable to the defendant." United States v. Outler, No. 1:06-cr-291, slip op. at 4 (E.D. Va. Apr. 26, 2019); see also United States v. Washington, No. 1:09-cr-121, slip op. at 4-5 (E.D. Va. July 1, 2019), appeal docketed, No. 19-7042; United States v. Brian Antwanine Johnson, No. 1:98-cr-283, slip op. at 3-4 (E.D. Va. July 3, 2019), appeal docketed, No. 19-7028.

Sentencing Act. None of the limitations in Section 404(c) of the First Step Act apply.[8] Paul's sentence was not previously reduced under the Fair Sentencing Act,[9] nor has he filed a previous First Step Act motion that was denied. The Court has reviewed the government's remaining arguments with respect to Paul's eligibility and finds them unpersuasive. For these reasons, Paul is eligible for a sentence reduction under Section 404 of the First Step Act.

The Court must also determine what statutory sentencing range Paul would have been subject to had the Fair Sentencing Act of 2010 been in effect at the time he committed his offense. Paul argues that had the Fair Sentencing Act applied, the amount of cocaine base alleged in the indictment, 50 grams, would fall under 21 U.S.C. § 841(b)(1)(B)(iii), resulting in statutory penalties of five to 40 years' imprisonment; however, Paul argues that an even lower statutory range would have applied to him, because the Court at trial specifically instructed the jury that they need only find that Paul's offenses involved a "measurable amount of the controlled substance alleged in the Indictment." Paul therefore contends that the applicable statutory penalty under the Fair Sentencing Act would have been defined by § 841(b)(1)(C), and the

---

[8] That section provides: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. 115-391, § 404(c), 132 Stat. 5194, 5222.

[9] Although Paul's sentence was previously reduced under Amendment 782, the Court finds persuasive those recent cases suggesting that prior reductions under that amendment do not automatically disqualify a defendant from obtaining relief under the First Step Act. United States v. McDonald, No. 19-1221, 2019 WL 6721187, at *2 (8th Cir. Dec. 11, 2019) ("when the district court reduced [defendant's] sentence in 2016, it did not do so in accordance with the Fair Sentencing Act; it instead relied on Amendment 782 and 18 U.S.C. § 3582(c)(2)"); United States v. Copeland, No. 7:06-cr-18, 2019 WL 2090699, at *3 (W.D. Va. May 13, 2019) ("it does not appear to the court that a person who received the benefit of a Sentencing Guideline amendment would be precluded from seeking relief under the First Step Act.").

statutory range would have been zero to 20 years' imprisonment. The government counters that because the PSR attributed 3,598 grams of cocaine base to Paul, and the Court at sentencing accepted that calculation, Paul's statutory range even under the Fair Sentencing Act would have been 10 years to life.

The government's argument would lead to a result that is contrary to the Supreme Court's decisions in Alleyne and Apprendi, which provide that facts that increase the penalty for a crime beyond the statutory maximums and minimums must be submitted to the jury. The government argues that Apprendi and Alleyne should not apply here. This argument is unpersuasive. This Court has already rejected the argument "that a section 404 motion does not give rise to a de novo resentencing, depriving defendants of any ability to litigate claims of constitutional error" under Apprendi and Alleyne. Washington, No. 1:09-cr-121, slip op. at 5. And although some courts have concluded that Apprendi and Alleyne do not apply in First Step Act cases, the Court finds more persuasive the "far greater weight of authority hold[ing] that a judge's sentencing findings, made only by a preponderance of the evidence, cannot be used to establish the statutory range for purposes of the First Step Act." United States v. Moore, No. 4:09-cr-3092, 2019 WL 3966168, at *5 (D. Neb. Aug. 22, 2019) (collecting cases); United States v. Latten, No. 1:02-cr-11-12, 2019 WL 2550327, at *2–3 (W.D. Va. June 20, 2019) ("relying on the drug weight attributed to defendants in their PSRs, rather than that charged in the indictment, affects more than the judge's discretion within a prescribed statutory range — it determines the prescribed range, and it may raise a defendant's sentence beyond the level otherwise justified by a guilty plea or jury verdict on the drug weight charged in the indictment. Therefore, it triggers the collective requirement of Apprendi and Alleyne").

The Court therefore finds that it is inappropriate to base Paul's statutory sentencing range on the drug quantities determined by the Court at sentencing based on the PSR, and instead concludes, based on the Court's instruction to the jury that there was no need to find more than a "measurable amount" of the drug charged in the indictment, that Paul would have faced a statutory sentencing range of zero to twenty years' imprisonment.[10] Although Paul's advisory guideline range is 324 months to 405 months, a sentence within that range significantly exceeds the statutory maximum that would have applied had the Fair Sentencing Act been in effect at the time of Paul's offense. See, e.g., United States v. Valentine, No. 1:99-cr-01-2, 2019 WL 2754489, at *6–8 (W.D. Mich. July 2, 2019) ("without any admitted to or jury found quantities, only the penalty range of Section 841(b)(1)(C) is properly in play, and it calls for a maximum of twenty years imprisonment. Therefore, when looking back and considering the sentencing array 'as if' the Fair Sentencing Act thresholds were in effect, Defendant['s] . . . conviction must be limited to the penalty ranges of that Section"); United States v. Mansoori, No. 97-cr-63-9, 2019 WL 6700166 (N.D. Ill. Dec. 9, 2019) (reducing the defendant's sentence to the statutory maximum of 20 years where no minimum drug quantity was charged in the indictment or submitted to the jury, although the PSR stated that the defendant had sold "20-30 kilograms of cocaine at a time, often on a weekly basis"). On this basis, combined with the factors discussed below, the Court finds that a guideline sentence is inappropriate.

The government has devoted only one paragraph of its 26-page opposition memorandum to argue that even if Paul is eligible for a First Step Act reduction, the Court should deny relief in the exercise of its discretion. This argument is unpersuasive. The Court has considered the

---

[10] Even if the statutory range were based instead on the amount of cocaine base charged in the indictment, Paul has already served well over five years' imprisonment, the mandatory minimum now associated with that amount of cocaine base.

9

advisory guideline range, the amended statutory sentencing range, the information in Paul's PSR, the transcript from his sentencing hearing, and the 18 U.S.C. § 3553(a) factors closely, and concludes that granting Paul's motion is appropriate. The government's sole rationale for denying relief is that granting a reduction would award Paul a "windfall" compared to defendants prosecuted under the quantity thresholds of the Fair Sentencing Act, suggesting that the charging document in Paul's case would have been changed to reflect the Act's new thresholds if the Act had been in effect at the time Paul was prosecuted and sentenced. This argument is not supported by most courts considering the resentencing issue, as "[n]early all other district courts . . . have rejected the notion that a court should engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered." United States v. Williams, No. 5:06-cr-14, 2019 WL 5967968, at *5 (W.D. Va. Nov. 13, 2019) (internal quotations and citations omitted) (collecting cases); See also United States v. Thompson, No. 1:05-cr-42, 2019 WL 4040403 at *7 (W.D. Pa. August 27, 2019) ("Engaging in a hypothetical assessment of how a defendant might have been charged and how a finding of guilt would have come about is fraught with conjecture and reflects an approach that is contrary to the sound administration of justice."). Although the potential disparity referenced by the government is a factor to be considered, other factors must also be considered, including that Paul has already served over 20 years of incarceration and that there is an ongoing disparity in sentencing for crack and powder cocaine offenses. As Paul observed in response to the government's opposition, resentencing him furthers one of Congress's goals in passing the Fair Sentencing Act and the First Step Act, namely reducing the latter disparity.

The government has not identified any public safety- or recidivism-related reasons to keep Paul incarcerated for the remaining period of his original sentence. For example, the

government's opinion includes no discussion of Paul's disciplinary record. Although Paul admits that he has been sanctioned for various disciplinary violations during the course of his incarceration, [Dkt. No. 319-2] at 7-12, 14-15, many of these violations were minor, and it has been almost three years since his last violation. Paul's most serious violation, assault with serious injury, occurred over eight years ago. [Dkt. No. 319-2] at 8.

Paul has also made significant efforts to rehabilitate himself, including by earning his GED, [Dkt. No. 319-2] at 2; pursuing training in heating and air conditioning, id.; completing 2,600 hours of training in horticulture and land management, id. at 2-3; and taking courses to prepare for reentry, including courses entitled "Money Skills," "Get Right with Your Taxes," and "How to Find a Job," id. at 2. These efforts suggest maturity and self-discipline. Paul also has close connections with supportive members of the community who hope to ease his reentry into society, as evidenced by the many letters submitted in support of his motions. [Dkt. No. 319-4]. When the crimes at issue in this case occurred, Paul was a 24-year old high school dropout. He is now a 45-year old man who has expressed regret for his actions, and who has been paying his debt to society for over twenty years. After release, he will serve a five-year term of supervised release, which should assist in his transition.[11]

The Court finds that a sentence of 288 months, or time served if the BOP determines that a sentence of 288 months would result in Paul's immediate release, adequately reflects the purposes of sentencing as reflected in 18 U.S.C. § 3553(a) by addressing the seriousness of Paul's offense, general and specific deterrence, promoting respect for the law, protecting the public, and providing opportunities for rehabilitation. For these reasons, it is appropriate to grant

---

[11] Should the United States Probation Office conclude that Paul would benefit from mental health or anger management treatment, the Court will modify Paul's conditions of supervised release to add such treatment.

Paul the modest sentence reduction he seeks. Should Paul's sentence reduction effectively amount to time served, the Court also finds that it is appropriate to give the BOP a 10-day window in which to prepare him for release.

For the foregoing reasons, Paul's motion will be granted by an appropriate Order to issue with this Memorandum Opinion.

Entered this 12th day of December, 2019.

Alexandria, Virginia

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge